UNITED STATES OF AMERICA

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  04-CR-10007-MEL |
| | ) | |
| MARCO SUAREZ-PEREZ | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

The undisputed advisory Guideline range in this illegal reentry prosecution is 57-71 months.  See Booker v. United States, 125 S.Ct. 738 (2005).   Applying 18 U.S.C. § 3553 in this case, see Booker, suggests that the appropriate sentence for Suarez-Perez's first illegal reentry to the United States should be 36 months imprisonment rather than a term within the advisory Guideline range of 57-71.

1.  Suarez-Perez returned to the United States to help his family of United State citizens;

2.  Many defendants similarly situated to Suarez-Perez receive substantially less jail time than the 57-71 months recommended by the advisory Guideline range as a result of charge bargaining under Fast Track programs the Department of Justice operates in many other districts.

3.  A sentence of 36 months is "sufficient" to achieve the purposes of sentencing set forth in § 3553(a)(2).

In support of this request Suarez-Perez relies upon this Memorandum and the letters attached hereto.

STATEMENT OF FACTS

Suarez-Perez is a 29 year old man from the Dominican Republic enjoying the strong

support of his longtime girl friend Ivonne Hernandez.  Ms. Hernandez is a United States citizen.

Together, they have two children.  In support of Suarez-Perez, Hernandez has written a letter to

the Court which is attached to this Memorandum as Exhibit A.

On August 31, 2000, Suarez-Perez was deported to the Dominican Republic.  His

convictions in Rhode Island state court for selling cocaine led to his deportation.  Since his

deportation, Suarez-Perez has no new convictions (other than the conviction in the instant

matter).  He was found by federal authorities on December 15, 2003 in the custody of local law

enforcement.  The latter had arrested Suarez-Perez for a disorderly person charge; in the course

of the arrest officers allege Suarez-Perez committed an assault and battery on an officer.  None of

these charges have been adjudicated.  Notably, Suarez-Perez' record is devoid of any other

arrests or convictions for acts of violence directed at another person.  Indeed, Suarez-Perez

> came back to the United States with the intention of giving his children 'the best of
> [him]'.   He wanted to teach them not to get involved with the kind of people with whom
> he was involved so that his children could become good people.

PSR ¶ 37N.

Ms. Hernandez' letter confirms Suarez-Perez' account.

Unfortunately for Suarez-Perez he returned to the District of Massachusetts rather than a

border district in the Southwestern United States.  For as the Court may well know in many of

those border districts the United States Attorney's Office offers defendants in reentry

prosecutions a so-called fast track alternative.  Under the fast track a defendant facing an illegal

reentry prosecution after having sustained an aggravated felony conviction may plead to lesser

charges that caps the defendant's jail term at either 24 or 30 months. For example, the District of Arizona, the Central District of California and the Western District of Washington all have this type of fast track. Other districts offer other types of fast track dispositions to various illegal reentry defendants. These districts include the District of New Mexico, the Southern District of California, the Southern District of Texas (portions thereof), the Western District of Texas (again portions thereof).[1]

The more general data available from the United States Sentencing Commission strongly suggests that large numbers of immigration offenses were resolved outside the guideline range even before the advent of <u>Booker</u>. For example, according to the FY2002 data (this is the most recent data available from the United States Sentencing Commission at its web site www.ussc.gov), Courts granted a downward departure in 31% of all immigration cases nationally. The six fast track districts described above accounted for most (66%) of the immigration offenses nationally.

ARGUMENT

A.    <u>The impact of United States v. Booker, 125 S.Ct. 738 (January 12, 2005)</u>.

After <u>Booker</u>, the federal sentencing guidelines no longer constitute a mandatory sentencing scheme. Rather, a court must consider all the factors enumerated at 18 U.S.C. § 3553(a)(1)-(7), and impose a sentence which is "sufficient <u>but not greater than necessary</u>" to achieve the four purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2)(emphasis added).

---

[1] The information on the various fast track programs comes from the sharing of information among Federal Defender Offices; it is based upon the reports of the Federal Defender Offices in the mentioned judicial districts.

The guidelines are not now irrelevant to a court's sentencing decision.  Among the factors enumerated in § 3553(a) are the applicable guideline range (§ 3553(a)(4)) and the Sentencing Commission's policy statements (§ 3553(a)(5)).

Now, however, other factors appearing in § 3553(a) play at least an equal role in federal sentencing.  Otherwise, the guidelines constitute a de facto mandatory scheme and the Sixth Amendment right vindicated in Booker is violated.  See United States v. Hughes, 2005 WL 147059 at *3 (4th Cir. January 24, 2005) (sentencing court must consider relevant factors set forth in § 3553(a), as well as the prescribed guideline range, before imposing a sentence).

B.     The applicable guideline sentencing range.

The guideline range in this case is 57-71 months.  Suarez-Perez, however, falls outside the heartland of the range because he returned to the United States to help his family rather to commit further crimes.  Cf. Senator Alphonse D'Amato, 133 Cong. Rec. S4992-01 (1987)(in support of increasing the maximum punishment for reentry offenses, stating that "These felons are involved in an array of illegal enterprises including drug trafficking, money laundering, fraudulent credit card rings, racketeering, weapons sales and prostitution.")  Accordingly, the high range reflects an assumption about the conduct of reentry defendants upon their return to the United States that, in this case, is inaccurate.   Moreover, the significance of the sentencing range in a reentry prosecution is substantially diminished by the large number of cases the Department of Justice resolves outside of the Guidelines.

C.    <u>Consideration of other § 3553(a) factors</u>.

Here, the pertinent § 3553(a) factors support the sentence Suarez-Perez requests.

1.    <u>History and characteristics of the defendant (§ 3553(a)(1); 18 U.S.C. § 3661)</u>.

The Court should consider that the defendant returned to help his family and attempt to guide his children down a path different than the one he followed.  This desire and the lack of further convictions (other than the instance offense) reflect a significant change on defendant's part.

2.    The need to "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(C) and the need "to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(2)(6).

The sentencing goals of specific deterrence and sentence uniformity are satisfied by a sentence of 36 months followed by deportation.  This sentence sends the message to Suarez-Perez that even a return to the United States to engage in laudable non-criminal activities (i.e. help his family) will result in a significant jail sentence followed by inevitable deportation.  That the Department of Justice routinely charge bargains large numbers of these prosecutions for sentences of 24 or 30 months is powerful evidence of the sufficiency of the sentence Suarez-Perez proposes.  That the 36 sentence is closer to the sentence many defendants received under charge bargaining programs the DOJ operates promotes uniformity in sentencing.

3.    The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

Defendant will be able to take advantage of any educational opportunities the Bureau of

Prison makes available.  He requires no mental health or substance abuse treatment.

 PSR ¶¶ 37S-37V.

CONCLUSION

For the foregoing reasons, defendant requests that the Court impose a sentence of

36 months incarceration.

MARCO SUAREZ-PEREZ
By his attorney,


/s/ Leo T. Sorokin
Leo T. Sorokin
  B.B.O. #559702
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel:  617-223-8061